Estate of Gordon W. Bonnette, Deceased, Agnes B. Bonnette, Executrix v. Commissioner.
Estate of Gordon W. Bonnette v. Commissioner
Docket No. 20351.
United States Tax Court
1950 Tax Ct. Memo LEXIS 265; 9 T.C.M. (CCH) 158; T.C.M. (RIA) 50056; February 28, 1950
*265 Upon the facts, held: (1) Respondent's determination that the income tax return filed for the year 1942 in the name of "G. W. Bonnette," and signed only by Agnes B. Bonnette, as executrix, was the individual return of Gordon W. Bonnette sustained for lack of proof; (2) Respondent's disallowance of the claimed deduction on the 1942 return as taxes paid on the New Haven real estate sustained. Eugene H. Lorenz, Esq., Investment Bldg., Washington, D.C., for the petitioner. Paul E. Waring, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves a deficiency in income tax for the taxable period January 1, 1943 to February 7, 1943, in the amount of $5,014.56. The contested issue is whether in *266 computing the tax liability of Gordon W. Bonnette for 1943, the income tax return for the year 1942 filed in the name of "G. W. Bonnette," and signed only by Agnes B. Bonnette, as executrix, is to be treated as a separate return of Gordon W. Bonnette, or as a joint return of Gordon W. Bonnette and Agnes B. Bonnette, his wife. The case was submitted on oral testimony and exhibits. Findings of Fact Petitioner is the executrix of the estate of Gordon W. Bonnette, deceased, who died a resident of Silver Spring, Maryland, on February 7, 1943. Petitioner filed an income tax return on behalf of the decedent for the period January 1, 1943 to the date of his death, February 7, 1943, with the collector of internal revenue for the district of Maryland at Baltimore, Maryland. Petitioner also filed an income tax return in the name of "G. W. Bonnette" for the calendar year 1942 with the same collector. The decedent at the time of his death and for many years prior thereto was president of the Old Colony Washing Co., Inc., the name of which was subsequently changed to the Old Colony Laundry Co., Inc., which will be hereinafter referred to as the "Corporation." There were issued and outstanding *267 2,915 shares of capital stock. Certificates for one share each were originally issued in the names of Edna S. Smith, Dwight L. Smith, Louis Ottenberg, and James S. Hunter, for the purpose of qualifying these persons as directors. The remaining 2,911 shares were issued to Gordon W. Bonnette. The certificates issued in the names of Edna S. Smith and Dwight L. Smith show on the reverse side their endorsement in blank on the same date as that of their issuance, to wit: February 17, 1925. The certificate issued in the name of James S. Hunter is dated September 9, 1925, and bears his endorsement in blank as of that date. This certificate on its face bears the word "Cancelled" but the date of cancellation is not shown. James S. Hunter was a brother of Agnes B. Bonnette. He, prior to 1936, resigned as a director. The certificate issued in the name of Louis Ottenberg was issued on February 17, 1925. On the back of this certificate there is an assignment and transfer to the "Estate of Gordon W. Bonnette" under date of February 1, 1945. Ottenberg was the attorney for the corporation and the Estate of Gordon W. Bonnette, deceased. A certificate for one share was issued in the name of Agnes B. *268 Bonnette under date of January 1, 1936. The certificate was issued to her in place of the certificate previously issued in the name of James S. Hunter, which was cancelled. The certificate for one share was issued in the name of Agnes B. Bonnette for the purpose of qualifying her as a director. Upon the resignation of James S. Hunter, Agnes B. Bonnette was elected a director and was serving as a director throughout the year 1942. The certificate issued in the name of Agnes B. Bonnette bears no endorsement on the back thereof, she made no assignment and transfer thereof by separate instrument, and never had possession thereof. All the aforementioned certificates of capital stock were kept in a safe maintained in the office of the corporation, and after the death of Gordon W. Bonnette were delivered to the attorney for his estate. On December 31, 1941, the board of directors of the corporation declared a cash dividend of $1 per share on its 2,915 outstanding shares, payable on December 31, 1941. On February 19, 1942, the corporation issued its check to the order of Gordon W. Bonnette in the amount of $2,915 in payment of that dividend. On December 31, 1942, the board of directors *269 of the corporation declared a cash dividend of $2 per share, payable on that date. On December 31, 1942, the corporation issued its check in the amount of $5,830 to the order of Gordon W. Bonnette, which he deposited in an account maintained in the names of Gordon W. Bonnette and/or Agnes B. Bonnette. The latter did not draw against that account during the year 1942. A separate dividend check has never been issued to Agnes B. Bonnette, nor, so far as appears, to any of the other individuals who were the registered owners of a certificate representing one share of the capital stock of the corporation. Agnes B. Bonnette, as executrix, executed and filed an estate tax return on behalf of the estate of Gordon W. Bonnette, deceased, which was prepared by the attorneys for the estate. In that return, under "Schedule B Stocks and Bonds," it is shown that Gordon W. Bonnette, deceased, was the owner at the time of his death of 2,915 shares of the common stock of Old Colony Laundry Co., Inc. Agnes B. Bonnette did not advise the attorneys for the decedent's estate that she was the owner of one share of the 2,915 shares of the capital stock of that corporation issued and outstanding. On *270 April 18, 1941, Gordon W. Bonnette purchased with his individual funds certain real estate located at 65 Willis Street, New Haven, Connecticut, from Janet R. Mansfield. A deed from Janet R. Mansfield was executed to Ella P. Lawrence and Agnes B. Bonnette, as joint tenants with right of survivorship. This property was purchased by Gordon W. Bonnette for the purpose of permitting Ella P. Lawrence, a sister of Agnes B. Bonnette, to live there during her life. Ella P. Lawrence did not pay rent for the use of this property. On January 29, 1942 and on July 13, 1942, checks in the amount of $58.30 each, payable to the collector of taxes, New Haven, Connecticut, were drawn by Agnes B. Bonnette in payment of taxes due on the aforesaid real estate. The checks were drawn on an account at the Citizens Bank of Takoma Park, Maryland, maintained in the names of Agnes B. Bonnette and/or Gordon W. Bonnette. Prior to 1942, this account was maintained in the name of Agnes B. Bonnette. All the moneys deposited in that account came from Gordon W. Bonnette. In accordance with an understanding between Gordon W. Bonnette and Agnes B. Bonnette, the funds in that account were to be used to pay the running *271 expenses of the house maintained by them at 739 Sligo Avenue, Silver Spring, Maryland, such as upkeep, repairs and decorating. It was also understood between them that the taxes assessed against the New Haven real estate were to be paid from that account. Agnes B. Bonnette also used the funds deposited in that account to pay for articles of a personal nature purchased by her. Throughout the year 1942, Agnes B. Bonnette resided continuously with her husband, Gordon W. Bonnette, at 739 Sligo Avenue, Silver Spring, Maryland. An income tax return for the calendar year 1942 was filed in the name of "G. W. Bonnette." That return was signed only by "Agnes B. Bonnette, Executrix." An individual income tax return for the year 1943 was filed in the name of "Gordon W. Bonnette, Deceased" and was signed by "Agnes B. Bonnette, Executrix." Agnes B. Bonnette did not file a separate individual income tax return for the year 1942. She did file an individual income tax return for the year 1943. The respondent determined that the income tax return for the year 1942 filed in the name of "G. W. Bonnette" was his individual return. Opinion While the deficiency in controversy relates to the year *272 1943, by reason of the Current Tax Payment Act of 1943 the question presented involves a determination as to whether an income tax return for the year 1942 filed in the name of "G. W. Bonnette," and signed only by Agnes B. Bonnette, as executrix, is the separate return of Gordon W. Bonnette, or the joint return of Gordon W. Bonnette and his wife, Agnes B. Bonnette. The respondent in determining the deficiency treated the return as the individual return of Gordon W. Bonnette and applied the provisions of the Current Tax Payment Act on that basis. Petitioner contends that the 1942 return was in fact the joint return of husband and wife, because it included both an item of $2 of income belonging to Agnes B. Bonnette, and a deduction in the sum of $116.60 for real estate tax paid by her in that year; and the further fact that Agnes B. Bonnette filed no separate income tax return for the year 1942. The item of $2 now claimed by petitioner to have been income belonging to Agnes B. Bonnette is a dividend declared and paid in 1942 on the then outstanding shares of the capital stock of the Old Colony Laundry Co., Inc. The record shows that the 1942 dividend of $2 per share, as well as the *273 1941 dividend of $1 per share, paid by that corporation, was paid by a single check to the order of Gordon W. Bonnette as the legal and beneficial owner of all the issued and outstanding shares of the capital stock of that corporation. The basis of the claim that Agnes B. Bonnette was the owner of the $2 dividend declared and paid in 1942 is the fact that one share of the capital stock was issued in her name, that she never made any transfer or assignment of such certificate, but remained the legal owner thereof and as such was entitled to the dividend paid thereon. Upon this record we are convinced that the certificate of one share was issued in the name of Agnes B. Bonnette for the sole purpose of qualifying her to act as a director of the corporation. Certificates for one share each were issued in the names of three other individuals for the same purpose. No separate dividend checks were ever drawn to any of such individuals. All of these certificates of stock issued as qualifying shares were kept in the safe maintained by the corporation and were turned over to the attorney for the estate of Gordon W. Bonnette after his death. Agnes B. Bonnette never had possession of the stock *274 certificate issued in her name. She, as executrix of the estate of her husband, executed a federal estate tax return in which it was represented that Gordon W. Bonnette was the owner of all of the 2,915 shares which the corporation had issued and outstanding. She did not advise the attorney acting for her as executrix that she claimed ownership of the certificate of stock registered in her name. The fact that Agnes B. Bonnette did not execute the endorsement of transfer appearing on the reverse side of the certificate is of little importance since the record indicates the non-endorsement was due to oversight rather than intentional. This inference is further supported by the fact that the certificate issued in the name of Louis Ottenberg appears to have been unendorsed until after the death of Gordon W. Bonnette. We conclude that Agnes B. Bonnette was not the beneficial owner of the one share, but held it in trust for her husband. Therefore, the $2 dividend declared on such share was legally paid to Gordon W. Bonnette and was properly included in the 1942 return in question as to his individual income. Agnes B. Bonnette does not claim to have had any other income in 1942. Petitioner *275 has therefore failed to establish that the 1942 return was joint by reason of the inclusion therein of income belonging to Agnes B. Bonnette. In the 1942 return filed in the name of "G. W. Bonnette," a deduction in the amount of $116.60 was claimed as real estate taxes paid on the New Haven, Connecticut, property. The respondent disallowed the claimed deduction on the ground that Gordon W. Bonnette had no proprietary interest in that real estate. The petition filed herein sets forth no proper assignment of error with respect to this item. At the hearing of this proceeding, petitioner requested and was granted permission to amend the petition so as to set forth such an assignment of error. Petitioner on brief states: "Counsel for petitioner now waives said right to amend the petition and elects to leave the assignment of error as to said disallowance in status quo as set forth in the Petition." By reason of petitioner's waiver and election not to amend, the petition does not properly assign error as to the disallowance of the item of $116.60 as real estate taxes paid by Gordon W. Bonnette. But even if we were to consider the original petition as properly assigning error as to this *276 item, the record establishes that the New Haven property was jointly owned by Ella P. Lawrence and Agnes B. Bonnette, and that Gordon W. Bonnette had no proprietary interest therein. We sustain the respondent's disallowance of the claimed deduction in the 1942 return as tax paid on the New Haven property. Petitioner, however, contends that since the evidence establishes that Agnes B. Bonnette paid the amount of $116.60 in 1942 as taxes on the New Haven property, the 1942 return should therefore be considered the joint return of Gordon W. Bonnette and Agnes B. Bonnette. We are not impressed by such argument. We are convinced that the item of $116.60 was erroneously claimed in the 1942 return as a deduction to which Gordon W. Bonnette was entitled, and therefore furnishes no ground for now treating the return as joint rather than the individual return of Gordon W. Bonnette. Furthermore, the record establishes that the real estate taxes on the New Haven property were paid by a check drawn by Agnes B. Bonnette on the joint account in the names of Agnes B. Bonnette and/or Gordon W. Bonnette; that all the funds in that account came from Gordon W. Bonnette; and that it was the understanding *277 between Agnes B. Bonnette and her husband that the taxes on the New Haven property were to be paid out of such joint account. In view of the understanding that part of such funds were to be specifically applied to the payment of such taxes, Gordon W. Bonnette in reality made a gift of the taxes. Cf. Smith v. Hoey, 153 Fed. (2d) 846; Catherine G. Armston, 12 T.C. 539; Helen C. Brown, 12 T.C. 1095. Under these circumstances Agnes B. Bonnette would not be entitled to a deduction on account of the payment of such taxes had she claimed such a deduction in a separate return filed by her. We hold that the 1942 return in question included no deduction belonging to Agnes B. Bonnette. Whether an income tax return is to be treated as a separate or a joint return presents a question of fact. Section 51 (b) of the Internal Revenue Code applicable to the year 1942 provides that in case of a husband and wife living together the income of each may be included in a single return made by them jointly and the liability with respect to the tax shall be joint and several. Treasury Regulations 111, section 29.51-1 (b) provides that a joint *278 return of husband and wife (if not made by agent) shall be signed and verified by both spouses. Form 1040 on which such return is to be made contains the notation, under the signature lines, that "if this is a joint return (not made by agent), it must be signed by both husband and wife." Yet the return for 1942 contains the name of "G. W. Bonnette" and bears the single signature of Agnes B. Bonnette as executrix. Since Agnes B. Bonnette signed the return merely as executrix, her failure to sign it on behalf of herself may well justify the inference, we think, that she intentionally refrained from so doing lest she became severally liable for the tax. Since she had no separate income, the fact that she made no separate return is of no significance. It is obvious that the claim that the 1942 return was in fact a joint return is now being advanced for the purpose of securing the benefits provided for under the Current Tax Payment Act of 1943. That act did not become effective until June 9, 1943. Therefore, it could have no bearing on the intention of Agnes B. Bonnette to make a joint return for 1942. Due consideration being given to all the facts and circumstances disclosed by this *279 record, we hold petitioner has not sustained the burden of establishing that the 1942 return involved was the joint return of Gordon W. Bonnette and Agnes B. Bonnette, his wife. For lack of sufficient proof, we sustain the respondent's determination that the 1942 return was the individual return of Gordon W. Bonnette. Other adjustments agreed upon by the parties will be given effect to in the recomputation under Rule 50. Decision will be entered under Rule 50.